Come on up when you're ready. Thank you. May it please the court. Your honors, this is an appeal of denial of qualified immunity to two mayors of a small east Texas town. One mayor is the, one defendant is the current mayor, the second is the previous mayor. The sole, well let me say this, Mayors Mill and Chartier should prevail in this appeal because the comparators that the plaintiff has identified are not similarly situated to the plaintiff. And also they should prevail because these defendants actions were not objectively unreasonable in the qualified immunity analysis. The sole remaining cause of action as to these two defendants is a 14th Amendment equal protection claim. The plaintiff is alleging pay disparity under the 14th Amendment. Of course in this analysis, the plaintiff must identify, specifically by name, must identify another employee who is similarly situated to the plaintiff. And under 5th Circuit precedent, that similarly situated employee must be nearly identical. And under established 5th Circuit precedent, we know this. We know that a co-employee who has difference in training and qualifications than a plaintiff cannot be a comparator. We know that a co-employee who has a difference in job duties and responsibilities cannot be a comparator. A co-employee who has prior private sector job experience cannot be a comparator. Simply because employees may have some overlapping duties does not make a comparator. And last, having a co-employee hired at a different time in a certain context can make a co-employee not a comparator. And what's important in this case is any one of those differences standing alone would make a co-employee not a comparator. But in this case, we have every single difference between the plaintiff and the two named alleged co-comparators. You know, what looked to me in that case, though, and that's certainly a plausible argument you're making, except they, the other side, the plaintiffs say, look, I mean all of these differences that you're certain about titles and work that is different has no real meaning and it's all just made up because we all are in this thing together and it's totally interchangeable. I mean, that's the argument that they make. Your Honor, that is the argument and what we are here before this court on. And that seems like a jury question to me. Your Honor, our position on that is this, is we're bringing before this court the undisputed facts. And the undisputed facts in this case is the plaintiff's, the plaintiff's own testimony via deposition and declaration. And with respect to the two comparators that the plaintiff has identified, one gentleman last name Hurd, one gentleman last name Dablin, here is the, I'll be very brief, here is the plaintiff and Mr. Dablin. And the plaintiff testified that Mr. Dablin was the street supervisor for the City of Naples. Now in his brief before this court, Mr. Mitchell kind of dials that back a little bit and says, well, he was only nominally a supervisor, but nonetheless, Mr. Dablin was and held a supervisory position. At all relevant times, the plaintiff was never a supervisor or performed any supervisory functions for the City of Naples. Mr. Dablin, in his job as street supervisor, he had duties of supervising street projects, planning street projects, and calculating what needs are necessary, purchases, that sort of thing, for street projects. The plaintiff never performed any of those functions. The plaintiff testified and was aware that Mr. Dablin had 20 years of prior experience in the private sector operating a motor grader. A motor grader is what's used to build a street. The plaintiff in this case had no experience whatsoever with motor graders and testified to that fact. The plaintiff testified that Mr. Dablin was the only employee who operated what's called a lay-down machine. It's the machine that applies the asphalt to a street. He's the only one trained, qualified to operate that machine. The plaintiff testified in this case that he did not have that responsibility and that he never operated that machine. Now, the plaintiff testified, there was no testimony, just the affidavit, is that right? Deposition and declaration both. Both. The plaintiff, what I think is really important in this case, is Mr. Mitchell testified, and I'm quoting here, one of the primary things that he did was drive a dump truck for the city of Naples. We don't dispute that. Mr. Dablin never operated a dump truck. Mr. Mitchell also testified that, quote, a huge part of his job was repairing sewer and water leaks for the city of Naples. And the plaintiff testified that Mr. Dablin never performed those job functions. The plaintiff testified that he alone had certain duties that pertained to the public library, community center. Again, Mr. Dablin never had those job duties. In summary, Mr. Dablin was a supervisor. He had different job duties and responsibilities. He had a different background and training and experience than the plaintiff. The same is true with Mr. Hurd. Before you leave, Dablin, it seems to me there is some evidence that would create a fact question of whether when he started work, he was yet the street superintendent or whether that's something that came later. He wasn't called street superintendent in minutes of the city council or whatever it is. And the mayor at the time said he did the duties, it seems to me, of what a street superintendent later may be doing. Do you have any reaction to that evidence? Is it at least unsay that your other evidence would not be sufficient? But isn't there at least a fact question about when Dablin actually became the street superintendent as opposed to just having duties in the street department? No, Your Honor, I don't. And here's the reason why. This court in precedent has made very clear that when we look at the context of every case to look at who is a comparator under the differences I previously discussed, one of the things that we don't do is we don't look at a title and just say, well, the title itself. We do look at what does that employee do? What functions does that employee perform? What is that employee's job qualifications and experience, prior experience? Okay, what you're telling me is the answer to my question is it doesn't matter. Let me start, though, with you answering my question. Is there a fact question of when Dablin became the street superintendent as opposed to perhaps being groomed for that? Is there a fact question of that even though you would say don't worry about it? Your Honor, I don't believe there's a fact question because the testimony and evidence is the job duties and functions I just described are what Mr. Dablin has done for the city since he was hired. But didn't the mayor at the time say that I was in charge of the projects on the street when Dablin first came? The mayor at that time, Mr. Mills, he had some private sector experience before he was elected mayor with certain machinery. And he did take, it's a small town, and he took an involvement in helping with street projects. But that doesn't take away from the fact that Mr. Dablin, his training, his experience, his qualifications, what he does by the plaintiff's own testimony is worlds of difference between the two. The same is true for Mr. Hurd. Now there's one thing about Mr. Hurd I'll come back to in just a moment. But I think it's important to point this out. Mr. Hurd worked for the city of Naples for four months. And that was in late 2011 to early 2012. And I'll address that point in just a moment. But Mr. Hurd also had difference in qualifications, experience, and functions. For example, Mr. Hurd was a certified welder before he came to the city of Naples. Mr. Hurd performed welding duties for the city of Naples. The plaintiff testified that he is not a certified welder. Mr. Mitchell had a background in plumbing, electrician, kind of handyman type work. And Mr. Hurd had a background as a certified welder. Also Mr. Hurd had 25 years of prior experience in the operation of heavy equipment, including a motor grader. In fact, when he was there only that four months, one of the things he did is he built the pad and did other things with the motor grader to help the city of Naples build a fire station. The same thing with Mr. Davlin as Mr. Hurd. The plaintiff testified that he alone performed sewer water leaks, did certain functions that Mr. Hurd did not perform. And I've outlined all those differences in our brief. Your Honor, the case authority that I would just very briefly point out on comparators, and I'll mention just a couple, is the first is Frazier v. Sabine River. And it's a 2013 case, and this court in that case found that the plaintiff was not a, or the co-employee was not a comparator to the plaintiff based on one single distinction. And that distinction was the plaintiff had a background in carpentry and the alleged comparator had a background in plumbing. That distinction alone, that background training was the factor that made the co-employee not a comparator. In Fields v. Stephen F. Austin, which is a 2016 case, each, there were two plaintiffs in that case, and they named multiple comparators and they were all drivers in the university system. Shuttle bus drivers, bus drivers, and the court examined not only just their driving, but what did they do also. Some of the drivers had some mechanic experience. Some drivers operated equipment that had hydraulics. There were these other duties in addition to their driving duties that made them not comparators to the two plaintiffs. And last, just a couple weeks ago, in the Mississippi Valley State case, which I submitted a letter brief on last week, the court there found there were two key differences, two key differences between the plaintiff and the alleged comparator. And the two differences were this. The alleged comparator was hired seven years after the plaintiff, and the alleged comparator had different private sector experience, and those factors alone were sufficient to find that the co-employees were not comparators. Your Honor, in this case, we have shown with undisputed evidence that Mr. Davlin and Mr. Hurd did not have the same job responsibilities as the plaintiff, had different private sector experience, had different training and qualifications, and for that reason, Your Honor, Hurd and The other issue I spoke about just a moment ago was Mr. Hurd's employment, and I have briefed this, I think, thoroughly, and I submit that to the court, but I do point this out. Mr. Hurd left the employment of the City of Naples four years and six months before this lawsuit was filed. And our position is, as a matter of law, and I submit to the court the Frazier v. Sabine River case where a time-barred comparator was discussed, I submit to the court that Mr. Hurd, as a matter of law, cannot be a comparator for the simple reason that any pay disparity that existed between the plaintiff and Mr. Hurd occurred over four and one-half years prior to filing suit. To the extent Mr. Hurd is being offered for some other reason, that he's being offered to just show a pattern and practice, this circuit has a long precedent in that pattern and practice evidence may not be used in a lawsuit that is not a class action. In an individual case like this, pattern and practice evidence is not permitted. The plaintiff has cited some cases, some Fourth and Eighth Circuit cases, that do allow some background comparators that are outside the limitations. I submit to the court the significant difference between that Fourth and Eighth Circuit case and this case is the fact that those circuits allow pattern and practice evidence in individual cases. The last point I'd make, Your Honor, is qualified immunity. Just a couple weeks ago, our Supreme Court told us that courts are not to define clearly because engaging generality, doing so, avoids the crucial question of whether the official acted reasonably in the particular circumstances that he or she faced. And Your Honor, I submit to the court that's exactly what the district court did in this case, engaging generality. In fact, the court's memorandum opinion says this, there is no serious argument about whether the right to be free from discrimination in the terms of condition and employment was a clearly established right. I agree with that. That is a clearly established right. But what the district court did not do is look at this case individually for Mayor Mills and individually for Mayor Chartier and do an appropriate qualified immunity analysis. And we submit, Your Honor, that if that analysis had been done, that as we pointed out in the brief, that with respect to the allegations against Defendant Mills and Defendant Chartier, that the law was not clearly established under the specific context of this case. Your Honor, we believe that none of the actions complained of by the plaintiff in this lawsuit demonstrated that either defendant acted unreasonably in the specific context, and we would ask the court to review this matter under the specifics of the context of the case for qualified immunity. Thank you. Thank you, Your Honor.  I want to please the court. I want to just first address one quick issue on the statute of limitations issue that defense counsel raised. This is not a pattern and practice case in any way. The issue is solely whether evidence outside the statute of limitations may be relevant evidence of a similarly situated comparator. And as I'm sure you know, in these cases, in cases where the plaintiff is alleging discrimination, often the appropriate comparator is the plaintiff's predecessor in a job. So a defendant's proposed rule would lead to this arbitrary rule where a comparator is barred not because they didn't do the same duties, but simply based on the date that the lawsuit was filed. Is it fair to say, though, that you have not found any Fifth Circuit case directly on point? It is fair to say that defense cases don't hold that. They do raise chauffeur, but in chauffeur . . . I'm talking about your cases. Do you have any case that in a situation like this, we have held that such evidence is admissible? I do not. I'm not saying this may be the time to make such law, but I just want to make sure of that. Yes. Thank you, Your Honor. But the case that defense principally raised is chauffeur, and in that case, not only was there a three-year gap between when the plaintiff was alleging discrimination or pay and when her comparator was actually retired, so that's a much harder argument to make, but more importantly, chauffeur relies on a misreading of the Anthony v. Galveston case, which defendants cite to. Both in Anthony and also in Frazier, the plaintiff's claims were actually time-barred because in that case, the plaintiff was comparing their pay well outside their limitations period also with comparators who also worked outside the limitations period. So that's not a question of when the statute of limitations should cut off evidence. That's simply, they couldn't bring that claim because they were alleging discrimination totally outside of that period. But I do want to go back and for a second I'll state that on this interlocutory appeal from the denial of summary judgment based on qualified immunity, as you know, the court lacks jurisdiction to even review the fact findings of the district court. And the district court specifically found a fact issue on whether Lloyd Davlin, the plaintiff's comparator, started as a supervisor. What if we find there is in fact no material fact issue? Doesn't that then become a legal question that we can review? This court can review the legal significance of the facts as found by the court, but the fact that the district court found a fact issue over whether he started as one precludes this court from finding that as a supervisor, because Davlin was a supervisor, therefore that analysis should apply. And the court also found a fact issue as to what extent plaintiff's and his comparator's job duties differed significantly. And finally the court found a fact issue regarding the extent of Davlin's relevant experience. So all those fact findings are not reviewable, those fact issues are not reviewable in this appeal. You have heard from defense counsel regarding what plaintiff and his comparators did approximately 5% of the time in their jobs. So I want to talk a little bit about what they were doing the rest of the time. The public works department is the city of Naples maintenance group. They handle all regular maintenance that needs to be done for the city. If a log falls over a street, they're the guys that work together as a team to haul it off. If anything needs to be done versus cleaning or any other general maintenance, mowing, cutting ditches, they do it. But most of what their job was, was taking care of the water and sewer systems for the city. But is that the focus of our inquiry or is the focus of our inquiry the background experience and talents that the respective employees had? In other words, if you have various talents of employees all doing the same tasks, are any of those with divergent talents appropriate comparators? Your Honor, under the similarly situated analysis, the plaintiff's job... You understand what I'm saying? It may have been a little confusing. I'm trying to answer your question, but the similarly situated analysis depends on what the comparators were doing almost all the time. They're not required to be clones. But where, like in the Oviedo case from the 5th Circuit, the plaintiff and his comparators spend almost all their time doing the same thing, and then the plaintiff has additional skills, and the small differences will not render comparators otherwise similarly situated. Is that 5th Circuit law where you say it said that? Yes. It said in my brief, Oviedo versus Steve Sash and Dorr. In that case, the plaintiff was a personnel clerk, but she also handled some accounting duties, and the 5th Circuit held that the fact that she handled additional duties, which her comparator did not, couldn't justify a finding that there was no pay discrimination. And ultimately, that makes sense, because at bottom, what the question is, is whether there is a legitimate reason for the pay discrepancy. So when we look at comparators, it's important to understand with the plaintiff and these comparators that, in fact, they were doing the same things all the time. They were checking water meters. They were cleaning the sewer plant every day. They were connecting and disconnecting service. They were general handymen. But for all those duties, none of the qualifications which the defendant has talked about are relevant. And so the street projects, which defense counsels discussed, were exactly seven projects since 2012. And it's in the record that each project lasted two weeks or less. Just look at Mitchell versus Hurd, for example. Hurd was a certified welder. He performed welding services for the city. 25 years experience with the construction equipment. Experiences a motor grader, actually used the motor grader. Compared to Mitchell, who had no construction experience, his experience was with forklifts only, and he had experiences in electrical and plumbing, but did not apply those in terms of the job in a regular kind of way. I mean, it seems that if you just line it up, that Hurd is clearly the superior person in terms of his employment record. And the same thing would be true with Davlin. I mean, he was a street supervisor. Responsibilities included supervising. I mean, although you say that it was not very often that he supervised. Operated the motor grader, had 20 years experience from a previous job at a mining company. He operated the lay-down machine, and he was the only person authorized to ride the lawnmower because of some kind of accident that earlier he had. And then you compare that to Mitchell, and it falls far short of that sort of experience background. So with respect to the welding, under the case law in the Fifth Circuit, you don't consider experience that is not relevant for the job duties. Welding was never a normal part of what the job of city worker was. But I mean, you'd pay somebody a little extra if there were occasional welding to be done, even if it were somewhat rare, instead of having to hire somebody to come in and do it, would you not? I mean, it just seems like that's part of the comparative expense. It may not be the determinant, but it is part of the comparative analysis. The case of Lenihan versus Bowling addresses the fact that small differences don't defeat similar situated analysis. Enough small differences would, though, wouldn't it? At this point, we're in a level of such granulated detail where we're saying that on one occasion, Hurd was asked to weld some bars, and that's a question merely of who can handle this additional task that we may need to do. For instance, if there was a leak in the ceiling of the city library, who can repair that? Who has plumbing experience? They might call Mitchell to do that. So that's not the kind of difference that justifies a pay differential. But you'd have to say the motor grater and the lay-down machine would be relevant to his job pay, would it not? Defendant's principal reason they have alleged is that plaintiff didn't run the motor grater at the lay-down machine. But there are a few reasons why we can demonstrate that that is actual pretext. For one thing, Mayor Mills testified that he could have trained Mitchell to run the motor grater. But he didn't. Defendant's counsel is arguing that the motor grater was so— I mean, that doesn't—in other words, that may be discrimination, that he could have changed, but he didn't. But that does not make up for the fact that he's not an appropriate comparator, irrespective of where his lack of experience may have resulted from. Here's the real reason why Plaintiff Mitchell could not operate the motor grater or the lay-down machine. He couldn't be in two places at once. Because in every paving project that the city did, which was seven projects, from the beginning of the project, pretty much the end of the project, somebody had to be operating the dump truck. And Mitchell was the only person who could operate the dump truck because he was the only person with a CDL license. But that still doesn't affect the fact that he may not be an adequate comparator, notwithstanding the reasons that he was not doing a certain work. I mean, what you say may be true, but I don't see that it makes any determined difference. It does make a difference how small of a time they were performing these little duties. And when it comes down to it, the differences that the defendant is pointing to are differences in simply what piece of equipment, who was running on seven projects. But, I mean, paving and the lay-down machine have a greater skill than driving a truck. I mean, ordinarily, you would think. These kind of machines, if you have any kind of heavy equipment experience, it's not a question of getting certified in the lay-down machine or having years of experience in order to run one. Mitchell told, sorry, Mills told Mitchell that he would be able to train him to run the motor grater and ask for the lay-down machine. Devlin had never used the lay-down machine before he was hired by the city. On the first project, he was shown how to use it, and that's just how it works. I also understand, I mean, that Mitchell, wasn't he fired from several jobs before? Didn't he come to the city with an employment record that was somewhat spotty? Well, it's true it's in the record that Mitchell was once fired, but Mitchell had a lot of experience, in fact 20 years, of driving CDL class trucks, operating forklifts, and operating something that's called a Skyractor, which is basically a very large forklift that can raise up to two or three stories high. In addition, he had already worked for the city for five years at the time that Devlin was hired, and so by that time, he'd offered other equipment, backhoes, trailers. He always operated the dump truck. His kind of mechanical experience would have allowed him to learn to operate the motor grater, as Mills testified he could have done. So Devlin also had never worked on a paved road project before he arrived in the city, but most importantly, the district court already found a fact issue on the extent of Devlin's experience. So if you are trying to establish that that was the real reason, they can't prove that because the district court found a fact issue on whether his relevant experience allowed that. Well, I mean, it just appears to me, I mean, someone that brings 20 years' experience from previous jobs and the other individual was terminated from previous jobs and didn't have a satisfactory work record experience, the comparator may not be appropriate. It's nowhere in the record that Mitchell was terminated from various jobs. What is in the record, and it's not also in the record that he had a bad work experience. The only thing that happened was he was terminated from one job for failing a test, but that has no bearing on the extent of his qualifications. What about smoking marijuana? What was that about? That was the reason why he was fired from one job, but that doesn't discount his experience and the fact that he subsequently held a class CDL license, which nobody else on the city's crew had. We know that the CDL was a preferred and valuable qualification for the city because that's what they put in their job posting. They said CDL preferred. CDL, commercial driver's license, is that what CDL is? Yes, that's the license that you need to be able to operate oversized vehicles, and nobody else on the city's work crew, the public works department, had that. And again, that was the only reason why Mitchell couldn't operate either the lay-down machine or the motor grader because he had to be in a different place in the city. What about Dalvin? He said he was the only person authorized to ride the lawn mower following other employees doing a bad job. Was Mitchell ever involved in riding the lawn mowers? The evidence in the record shows that all of the employees rode the riding mower until after May 2015, and after that point— What happened on that day that changed the situation? There's no evidence in the record that Mitchell was responsible for any accident with the riding mower. Who was? Did the record show anybody? I don't believe that's in the record. It may have been actually after we first reached out to the city as plaintiff's attorneys in alleged race discrimination. So I don't know if the record would show that. Also, to the extent duties differ when the plaintiff and the comparators are doing otherwise the same job. So when you're performing most of the duties that are the same all the time, small differences like these don't show that Mitchell is not similarly situated to his comparators. And Mitchell's experience at the city is also relevant. This is not the case in Mengistu where experience and qualifications were not relevant because the city was only looking at just setting salary based solely on the funds available. So in that case, they couldn't look at experience or qualifications because that wasn't a reason that the plaintiff was able to prove. But in this case, the defendant is arguing that Davlin's and Herd's superior experience and qualifications are the reason for the pay discrepancy. So it's important to look at the fact that there's evidence from the defendant that Mitchell could have run and done the same job duties that they're basing the pay difference on. At the end of the day, these are simply different machines, and Mitchell as well as his comparators had over 20 years' experience running heavy machinery, and Defendant Mills himself stated that he could have trained Mitchell how to do it. So having Davlin go through the process of obtaining a CDL license would have been more onerous than training Mitchell to run the motor freighter. And in fact, Mills asked— Again, I mean that may have been fair or unfair, but it still does not solve the problem that they're not appropriate comparators. However, whatever kind of excuses he may have had for not being able to run a particular machine that someone else was running doesn't make him an appropriate comparator for the person who's running the machine. The cases from the Fifth Circuit and also from the Southern District of Texas don't say that the plaintiffs and the comparators have to be doing the same exact thing all the time. If you look at the case side of my brief, Wosikowski v. NOV, they found there that where the plaintiff was doing the same thing as her comparator 75 percent of the time and the rest of the time they were doing different duties, that they were similarly situated in that case. Also in Oviedo, the difference in duties was a small part, but ultimately these guys are maintenance workers. That's what they're doing day in, day out. And when they are doing different things, it's like being on a fire crew. One guy has the hose, one guy is climbing the ladder, one guy is connecting the hose to the hydrant, but they're all firemen. They're all doing the same job. So to base a holding that plaintiff is not similarly situated on the basis that he had additional qualifications that his comparators did not is not the standard. All right, counsel. I think we have your case. Your time is up. I'd like to briefly address the argument we had about Mr. Hurd being a time bar comparator, and I didn't mention this earlier. Two things. If we look at the facts in this case, this suit was filed in September of 2016. Mr. Hurd had been gone from the city for four years and four and a half years. Well, if we take Davlin out of the picture, and if the plaintiff had brought this lawsuit based solely on Hurd as a comparator, there's no question the claim would be barred by the statute of limitations. Now, the plaintiff, the cause of action is a 14th Amendment equal protection claim, but it has been brought via 1983, which makes it a two-year statute of limitations. But even if we apply the plaintiff's argument that a four-year statute of limitations applies, we're still past four years. And so either way, if Davlin wasn't in the picture, we wouldn't have a lawsuit. And so the only reason Hurd is being inserted into this lawsuit is to try to use some pattern and practice evidence which is prohibited. I would also submit the following policy reasons for disallowing a time bar comparator because it's a classic example in this case. Mr. Hurd was employed in late 2011, early 2012. Well, looking back at the city of Naples, we had an entirely different city council. We had an entirely different budget. We had entirely different economic conditions. We had an entirely different tax base. And so to go back beyond statute of limitations in a case like this would wreak havoc on comparison because you have to look at all these factors, plus the factors that you would normally associate with a statute of limitations argument, witnesses being gone or deceased, retention of documents, all those sorts of things. There's good policy reasons to have a finding that a plaintiff's pay disparity claim, both the plaintiff's pay and the comparator's pay, must be within the statute of limitations period. Otherwise, for the reasons I've talked about, it just doesn't work. Your Honor, just very briefly about jurisdiction. We have in our record before this court, we have painstakingly made efforts to present to the court undisputed evidence, the plaintiff's testimony, because we don't believe there's any genuine issues of material fact on the points that we have raised. And as a matter of law, there is no prima facie case of discrimination because there is no similarly situated comparator. Therefore, this court obviously has jurisdiction to hear this appeal. The plaintiff's argument in their brief and here briefly today was an argument that this court does not have jurisdiction and that the court must adopt the district court's factual findings. This is on qualified immunity. Correct, Your Honor. This is a qualified immunity appeal. The question would be whether it was unreasonable for the city to engage in these paid differentials. Your Honor, with respect to the issue of qualified immunity, let me just briefly talk about whether these individuals, not the city, but whether these individuals would Correct, Your Honor. And with respect to Defendant Chartier, he is the gentleman, the mayor that came into office in May of 2015. And looking at – let's do a quick specific analysis of Defendant Chartier first. Herd was gone three years before Defendant Chartier came into office, but yet the plaintiff is trying to use a comparator when he wasn't even the mayor three years before. And that's just patently unfair to begin with, but it's undisputed. There is no evidence before this court. It is undisputed that Defendant Chartier, he never once changed or altered the pay of Mr. Mitchell, nor since his time in office from May of 2015 to present, never changed the pay or altered the pay of any other employee. It was the city council that made the pay determinations. So my question is this. Under the specific analysis of qualified immunity that we're instructed to make a determination of clearly established law and whether that conduct was objectively reasonable in the specific context of a case, there is no case authority in this circuit that an elected official who's never adjusted the pay of an employee must conduct an investigation upon being elected and then remedy any alleged pay disparity. There is no such law that would have put Defendant Chartier on notice of that. And for that and other reasons, he's entitled to qualified immunity. Thank you. All right, counsel. Both counsel, thank you for helping us.